**STATE of Maine**

v.

**ONE 1977 BLUE FORD PICK–UP TRUCK and One 1980 Chevrolet Truck.**

Supreme Judicial Court of Maine.

Argued June 9, 1982.

Decided July 22, 1982.

Pamela Knowles Lawrason, Asst. Dist. Atty., Mary C. Tousignant, Legal Intern, Alfred, Cabanne Howard, Asst. Atty. Gen. (orally), Augusta, for plaintiff.

Eaton, Peabody, Bradford & Veague, Glen L. Porter (orally), Bangor, Daviau, Jabar & Batten, Joseph Jabar (orally), Waterville, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE, and WATHEN, JJ.

CARTER, Justice.

This case involves issues raised on consolidated appeal before this Court from judgments entered in separate actions in the Superior Court, York County. The Superior Court proceedings involved claims by the State for forfeiture of motor vehicles allegedly utilized in accomplishing violations of 12 M.R.S.A. § 7613 and § 7901. Those statutory provisions prohibit and penalize the importing of live bait into the State of Maine and denominate the offense to be a Class C crime.

The State's claim of forfeiture was based upon the provisions of 12 M.R.S.A. § 7907 which provides for the seizure of fish, wildlife or equipment used or possessed in violation of the prior statutory sections, among others, and provides for the forfeiture of such seized items. The State seeks to achieve appellate review by this Court of several issues, the principal one of which is whether motor vehicles are encompassed within the meaning of the term "equipment" as used in 12 M.R.S.A. § 7907.[1] We do not, however, reach any of the substan-

---

1. Title 12 M.R.S.A. § 7907 provides as follows:

All fish or wildlife hunted, trapped, fished for, bought, sold, carried, transported or found in possession of any person in violation of chapters 701 to 721, and all equipment, including firearms, possessed or used in violation of chapters 701 to 721 shall be contraband and shall be subject to seizure by any officer authorized to enforce chapters 701 to 721. Any officer making such a seizure shall, within a reasonable time, file with the court a libel against the wildlife or equipment, except that articles of less than $10 in value shall not be libeled unless reasonable doubt exists as to the ownership thereof, and except that any firearm seized in connection with a violation of section 7406, subsection 5, night hunting, shall be retained by the commissioner pending disposition of criminal proceedings and forfeited to the State upon conviction. The libel shall describe the fish, wildlife or equipment and the date and place of their seizure, shall cite the provision of law which is alleged to have been violated, and shall pray for a decree of forfeiture thereof. The libel shall be heard and the seized items disposed of according to section 7909.

tive issues presented by the appeal because we find that the State's failure to properly perfect these appeals by the timely filing of the Notice of Appeal was not cured under the Maine Rules of Civil Procedure by the Superior Court's determination of "excusable neglect" for late filing of the Notice of Appeal. That determination was made by the court upon the State's motion filed on the last day of the sixty-day period provided for under M.R.Civ.P. 73(a).[2]

The decisions rendered by the Superior Court in each of these cases were dated October 30, 1981, and were docketed on November 3. The State, however, filed its Notice of Appeal on January 4, 1982.[3] On that same day, the State also made an *ex parte* oral motion in the Superior Court seeking a determination of excusable neglect under Rule 73(a) for its failure to file the Notice of Appeal within thirty days of the date of entry of the judgment from which appeal was taken as required by that Rule. The Superior Court scheduled a hearing on the oral motion which was subsequently held on January 8, 1982.

At the hearing, the State explained the events leading to the failure of the State to file the Notice of Appeal in a timely manner. That explanation reveals that it was the practice in the District Attorney's Office in question to have service of documents from the Superior Court Clerk's Office in the same courthouse accomplished by hand-delivery. Pursuant to this practice, the two decisions in question on this appeal were hand-carried to the District Attorney's Office. On the arrival of those decisions in

the District Attorney's Office, they were received by a secretary who was unable to find the original files. Accordingly, she opened new files and filed those decisions in the new files. It was further explained that the Assistant District Attorney charged with managing these cases was out of the District Attorney's Office on vacation from sometime in late October through the early part of November. During that period of time, the office was short-handed due to the nomination of the District Attorney to a judicial position and resignation of another Assistant District Attorney. By happenstance, the Assistant District Attorney charged with the management of these cases learned on December 30th that the decisions had been rendered in October and docketed on November 3, 1982. That discovery led to the making of the oral motion on January 4, 1982, the last day provided for requesting an extension of time to file the Notice of Appeal for excusable neglect under M.R.Civ.P. 73(a).

This Court has very recently, in three cases,[4] had occasion to forcefully reiterate the long-standing rule[5] requiring strict compliance with the timeliness requirements of Rule 73(a) in respect to perfection of appeals. We have said "that compliance with Rule 73(a) is mandatory and jurisdictional for purposes of appeal." *Rice v. Amerling*, Me., 433 A.2d 388, 390 (1981). We also stated in *Rice* that Rule 73(a) "creates a maximum allowable time period of sixty days within which an appeal may be commenced." *Id.* at 391, *citing Harris Baking*

2. The text of M.R.Civ.P. 73(a) reads in pertinent part as follows:
   The time within which an appeal may be taken shall be 30 days from the entry of the judgment appealed from unless a shorter time is provided by law, except that: (1) upon a showing of excusable neglect the court in any action may extend the time for filing the notice of appeal not exceeding 30 days from the expiration of the original time herein prescribed....

3. Docket entries were corrected by order of the Superior Court entered on January 22.
   Under M.R.Civ.P. 73(a), parties have 30 days to appeal plus a 30 day "excusable neglect" period. Here, the 30th day is December 3, the

60th day is January 2. Since January 2 is a Saturday, the period expired on January 4, 1982.

4. *See Young v. Sturdy Furniture Co.*, Me., 441 A.2d 320 (1982); *Begin v. Jerry's Sunoco, Inc.*, Me., 435 A.2d 1079 (1981); *Rice v. Amerling*, Me., 433 A.2d 388 (1981).

5. *See Harris Baking Co. v. Mazzeo*, Me., 294 A.2d 445, 453 (1972); *Harrington v. Harrington*, Me., 269 A.2d 310, 314 (1970); *Kittery Electric Light Company v. Assessors of Town of Kittery*, Me., 219 A.2d 728, 747 (1966) (The requirement of timely filing is "mandatory and jurisdictional").

*Co. v. Mazzeo*, Me., 294 A.2d 445, 451 (1972). In *Rice*, the appellee had specifically raised the issue of the timeliness of the filing of the Notice of Appeal and the propriety of the Superior Court's underlying determination of excusable neglect by filing a motion to dismiss the appeal. We did not there review, however, the sufficiency of the determination of excusable neglect made by the Superior Court. Rather, we found that failure to file the application for the determination of the existence of excusable neglect within the second thirty day period prescribed by Rule 73(a) deprived the Superior Court of the power to make such a determination. *Rice*, 433 A.2d 392.

Since *Rice*, however, we have had occasion to deal with situations requiring specific review of the propriety of a Superior Court determination of excusable neglect within the context of the requirements of Rule 73(a). That is the issue we address in the present proceeding since it is clear that the application for the determination in this case was filed on the last day of the second thirty-day period provided for by Rule 73(a).[6]

We have recently held:

> This Court will consider on its own motion whether an extension of time to appeal upon a finding of excusable neglect pursuant to M.R.Civ.P. 73(a) was properly granted. *Begin*, 435 A.2d at 1081. The standard of excusable neglect is strict; extensions of time for filing notices of appeal should be limited to extraordinary cases. *Id.* at 1081–82; *see* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 73.6 (2d Ed. 1970).

*Young v. Sturdy Furniture Co.*, Me., 441 A.2d 320, 321 (1982). (Footnote omitted.)

Such review is undertaken on the principle that "[w]hen a question as to the jurisdiction of this Court exists, we are obliged to consider it on our own motion." *Begin v. Jerry's Sunoco, Inc.*, Me., 435 A.2d 1079, 1081 (1981); *Bacon v. Penney*, Me., 418 A.2d 1136, 1138 (1980).

In looking to the sufficiency of a determination of excusable neglect under Rule 73(a), we have observed in *Begin*:

> While Rule 73(a) was amended in 1966 to allow extensions not only for excusable neglect based upon a failure to learn of the entry of judgment, but also for excusable neglect in whatever form it may appear, 'the standard of excusable neglect remains strict' ... We recently noted that the interests of the litigants and of the public in general in seeing an end come to litigation underlie the strictness of the time requirement for perfecting an appeal.

*Begin*, 435 A.2d at 1081–82 (citation omitted).

By way of explanation of this Rule, we have said that "aside from cases of failure to learn of the entry of judgment, excusable neglect should be found only in extraordinary cases where injustice would otherwise result." *Reynolds v. Hooper*, Me., 407 A.2d 312, 314 (1979). *Reynolds* makes it clear that other than in those cases involving a failure to learn of the entry of judgment, excusable neglect can exist only in extraordinary instances where injustice would result. We have emphasized this point by saying "no reason other than failure to learn of the judgment should *ordinarily* excuse a party from the requirement that the notice be timely filed." *Begin*, 435 A.2d at 1082.

---

**6.** We do not have cause to confront the question which we noted but did not reach in *Rice*, 433 A.2d 388, 393 n.5, namely, "whether an order of enlargement of the appeal period for excusable neglect was effective to allow perfection of the appeal as timely where the motion was filed within the thirty-day period for enlargement, *but the order itself was not entered until after that period has expired.*" (Emphasis added.) Here, since we conclude that the determination by the Superior Court of the existence of excusable neglect was erroneous, *see*

*Young*, 441 A.2d at 322, we need not reach the question of whether the filing in this case of the order making that determination would have been effective under the provisions of Rule 73(a) *if the determination of excusable neglect upon which the order was premised was itself a sustainable determination.* For the same reason, we need not decide the validity of the appellee's contention that the motion was not timely filed because it was not filed *in writing* as required by M.R.Civ.P. 7(b)(1), within the 60 day period provided for by Rule 73(a).

The State contends in its brief that this case is one involving "a total failure [on the part of the District Attorney] to learn of the entry of judgment." Its claim of excusable neglect is "based on the fact that the State failed to learn of the entry of judgment until 57 days after such entry was made." Careful analysis of the facts surrounding the late filing of the Notice of Appeal [7] make it clear, however, that this is not a case of failure to learn of the entry of judgment as we have used that language in our prior opinions. Here it is undisputed that the personnel of the Clerk's office caused a copy of the judgment to be hand-delivered to the District Attorney's Office within a maximum period of three days after the date on which it was entered by the court. The judgment was timely placed within the custody of the District Attorney's Office and *within the actual knowledge of members of his clerical staff.* Thus, the Clerk's Office did all that it was obliged to do. The practice of hand-delivering such copies of judgments to the District Attorney's Office was described at the hearing as "routine" by the State's counsel.[8] The record does not show by which office's initiative this alternative method of transmission of papers to the District Attorney was utilized. The description of it as "routine" justifies the inference that it was a usual practice which had continued over some period of time and of which the District Attorney's Office was previously aware and in which it had acquiesced. The utilization of this method does not appear to have been unique to this case. There was nothing extraordinary, in the context of the existing practice, about the method of transmission of the judgments.

The core factual premise of the State's position is its assertion that "neither [the Assistant District Attorney] [n]or any other attorney in the office had knowledge or notice that a judgment had been rendered" until the fifty-seventh day after its entry. This assertion takes too stringent a view of the requirement that the Clerk give notice of the entry of judgment. The Clerk's duty is to transmit the notice to the attorney's office or place of business; in short, to place the notice within the ambit of the attorney's responsibility and control. Once that is done, the clerk does not have the duty, obligation or the practical ability to intrude into the attorney's office affairs to assure that the notice is brought to the attorney's personal knowledge. With the delivery of the notice of judgment into the custody of the attorney's office there passes also to the attorney the responsibility for its handling. Attorneys "must organize their work so as to be able to meet the time requirements of matters they are handling or suffer the consequences." *Begin,* 435 A.2d at 1083 *quoting Pinero Schroeder v. Federal National Mortgage Association,* 574 F.2d 1117, 1118 (1st Cir. 1978) (per curiam); *see also In re Gideon,* 17 B.R. 826, 828 (Bkrtcy.D.Me.1982).

Failure to obtain knowledge of entry of judgment in time to file a timely

---

7. Those facts are not in a strict sense evidentiary in the record below. They enter the record through the medium of a colloquy between the State's counsel and the Court in the proceedings held on January 4 and January 8, 1982. They were apparently treated by the court below, without objection from appellees' counsel, as representations of fact. Appellees' counsel made no request for an *evidentiary* hearing on the motion seeking a determination of excusable neglect, relying instead on oral presentations by counsel for the parties. Relying on the appellees' consent below, which is not challenged here on appeal, to this method of production of proof of the facts underlying the State's claim, we treat the factual portions of each counsel's presentation as stipulated facts.

8. The State's counsel described what happened in this case in the following language:

> She [the Deputy Clerk of the Superior Court] told me that she had followed the routine practice in such matters, which was to put a copy of the decision in a—basically in a basket in their office, and sometime later during that week—probably the 5th or 6th—those papers were carried upstairs and placed on the desk of our secretary. So, in fact, mailing—although entered into the docket book as a copy having been mailed to ... [an Assistant District Attorney] of this office of the decision—did not, in fact, occur. Really it is just a question of carrying the papers upstairs and apparently placing them on our secretary's desk.

notice of appeal will almost always occur as the result of some act of neglect. The essential injustice that results from such a lack of knowledge is that a procedural remedy is barred before one has the information requisite to protect one's entitlement to that remedy. Where the neglect causing such lack of knowledge is beyond the control of the party or counsel charged to act for that purpose, simple justice requires that the "neglect" be "excused". Where, as here, however, the neglect is that of the party charged to act, some extraordinary circumstance must be proven to justify excuse of such neglect. *See Reynolds*, 407 A.2d at 314; *Begin*, 435 A.2d at 1082; *Young*, 441 A.2d at 321. We find nothing in the nature of an event or circumstance so extraordinary in this case as to excuse the neglect of appellant's counsel to provide suitable office procedures to cause the judgment to be brought to counsel's attention once it was delivered into the custody and control of counsel's office. It is incumbent upon any attorney to institute internal office procedures sufficient to assure that judgments are properly dealt with once they are delivered into the custody of office personnel subject to the control of counsel. The failure to take necessary steps, to that end, even during periods of unusual circumstances in an attorney's office, is not an acceptable excuse for any resulting failure to obtain personal knowledge of the entry of judgment on the part of counsel. The finding of excusable neglect was in error.

The entry is:

Appeal dismissed.

All concurring.