11 P.3d 313 (2000)
102 Wash.App. 687
Damon R. BECKMAN, By and Through his legal guardian David L. BECKMAN; David L. Beckman; Judith L. Beckman; and William G. Coalter, by and through his legal guardian, Marjorie Coalter, and Eric C. Busch, by and through his legal guardian, Joseph Busch, Respondents,
v.
STATE of Washington, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, including but not limited to, Division of Developmental Disabilities, Adult Protective Services and Residential Care Services; Elizabeth Stremel, individually and in her official capacity acting under color of state law; Martha Goodloe, individually and in her official capacity acting under color of state law; Karen Kauffman, individually and in her official capacity acting under color of state law, Appellants.
No. 25982-6-II.
Court of Appeals of Washington, Division 2.
August 21, 2000.
Publication Ordered September 12, 2000.
*314 Loretta M. Lamb, Assistant Attorney General, Seattle, Michael E. Tardif, Asst Atty Gen-Dl & I, Olympia, Howard Mark Goodfriend, Edwards Sieh Smith & Goodfriend P.s., Seattle, Troy Nelson, Andrew Nelson, Bremerton, for Appellants.
Charles Kenneth Wiggins, Bainbridge Is, Kenneth Wendell Masters, Wiggins Law Ofc., Bainbridge Is, Stephanie Bloomfield, Gordon, Thomas, Honeywell, Tacoma, David P. Moody, Gordon Thomas Honeywell, Malanca Peterson & Daheim, Seattle, John Richard Creatura, Gordon & Thomas Law Firm, Tacoma, for Respondents.
Steven Bert Frank, Frank and Rosen, Seattle, for Other Party, Capps.
Karl B. Tegland, Treece Richdale Malone & Corning Inc Ps, Mill Creek, for Amicus Curiae.
ORDER DENYING APPELLANTS' MOTION TO EXTEND TIME TO FILE NOTICE OF APPEAL AND GRANTING RESPONDENTS' MOTION TO DISMISS APPEAL
ARMSTRONG, C.J.
BACKGROUND
Damon Beckman, William Coalter, and Eric Busch (Plaintiffs) are developmentally disabled adults who claim they suffered injuries while living in a state-licensed adult care facility. They sued the State of Washington, Department of Social and Health Services, its caseworker-employees, and the operator of the facility. On March 23, 2000, a jury awarded them $17.76 million in damages, including substantial punitive damages.
Sometime before April 4, 2000, Plaintiffs' counsel spoke to the trial judge's assistant to schedule a time for presentation of the judgment documents for each Plaintiff. The hearing was scheduled for April 14, 2000.
On April 4, 2000, Plaintiffs' counsel sent a confirming letter to the trial court judge with a copy to `Opposing Counsel.' At the same time, Plaintiffs' counsel prepared a `Note for Motion Docket,' with proposed judgment attached for each Plaintiff's case and with each addressed to `Janet L. Capps, Loretta M. Lamb' at the Attorney General's Office in Seattle. See CR 54(f). All of these documents were sent by courier to the Attorney General's Office and all bear a `Received' *315 filing stamp of April 4, 2000, from the Attorney General's Office.
No one from the Attorney General's Office appeared at the April 14 hearing. The trial court entered the judgments, and they were filed on the same day. However, neither the court nor Plaintiffs' counsel sent conformed copies of the final judgment documents to the Attorney General's Office.
On May 24, Plaintiffs' counsel wrote the Attorney General's Office, asking that the State pay the judgments. The next day, 10 days late, the State filed a Notice of Appeal. At the same time, the State moved to allow the late filing; Plaintiffs responded with a motion to dismiss the appeal.
The State contends CR 5(a) and RAP 18.8 allow such a late filing under the circumstances presented here. They do not.

DISCUSSION
I. CR 5(a)
CR 5(a) describes the documents that a party must serve:
{E}very order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties.
(Emphasis added.)
The State asks us to broadly construe the language of CR 5(a) and hold that the rule requires service of conformed copies of the final judgment on the non-prevailing party.[1] The State argues that because it was not served with conformed copies of the final judgment, its appeal is timely. However, the language of CR 5 and the related civil rules are plain. CR 5(a) does not require service of conformed copies of the final judgment.
Here, the terms `pleading' and `similar paper' do not include final judgments. A final judgment is not a `pleading' requiring service under CR 5(a). CR 7(a) defines `pleadings,' and that definition does not include judgments. See also Tiffin v. Hendricks, 44 Wash.2d 837, 843, 271 P.2d 683 (1954).[2] Rather, the civil rules treat judgments differently than pleadings. Compare CR 7-16 (pleadings or motions), with CR 54-63 (judgments).
A final judgment is not a `similar paper.' Even assuming ambiguity in CR 5(a), the rule of statutory construction ejusdem generis dictates this conclusion. That rule provides that general terms, when used in conjunction with specific terms, should be deemed to incorporate only those things similar in nature or `comparable to' the specific terms. John H. Sellen Constr. Co. v. Department of Revenue, 87 Wash.2d 878, 883-84, 558 P.2d 1342 (1976); Davis v. State ex rel. Department of Licensing, 137 Wash.2d 957, 970, 977 P.2d 554 (1999); Port of Seattle v. Department of Revenue, 101 Wash.App. 106, 113, 1 P.3d 607 (2000). In CR 5(a), the generic phrase `similar paper' must be read in conjunction with the terms `every written notice, appearance, demand, offer of judgment, designation of record on appeal.' Only those `papers' that are `comparable to' written notice, appearance, demand, offer of judgment, or designation of record on appeal *316 fall within the category of `similar paper.' The specifically listed `papers' in CR 5(a) are documents prepared by a party that generally state a party's claim or allegation. On the other hand, a final judgment, although it may be drafted by a party, is the formal record of a jury's verdict or judge's decision. A judgment does not state a party's claim or allegation. It is not, therefore, a `similar paper' as that phrase is used in CR 5(a).[3]
This reading of CR 5(a) is strengthened by reference to the rules regarding actual filing of the judgment. RAP 5.2(a) requires that notice of appeal be filed within 30 days of entry of the judgment in the trial court. CR 58 states that a judgment is `entered' when it is delivered to the clerk for filing. See Malott v. Randall, 83 Wash.2d 259, 517 P.2d 605 (1974). Requiring service of the judgment before the start of the running of the 30-day appeal period would effectively amend CR 58 and RAP 5.2(a) to require both the filing of the judgment with the clerk and service of conformed copies of the judgment before the 30 days begin to run. This is not what the rules say, nor what the rules contemplate.
Finally, CR 54(f) provides in part: `No order or judgment shall be signed or entered until opposing counsel have been given 5 days' notice of presentation and served with a copy of the proposed order or judgment....'
Thus, the rule specific to judgments requires only that the proposed judgment, not a conformed copy of the entered judgment, be served on opposing counsel.
The plain meaning of CR 5(a) is clear; its terms do not require service of conformed copies of the final entered judgment on the non-prevailing party. CR 5(a) does not afford the State the relief it seeks.
II. RAP 18.8
In contrast to the liberal application we generally give the Rules of Appellate Procedure (RAP), RAP 18.8 expressly requires a narrow application:
The appellate court will only in extraordinary circumstances and to prevent a gross miscarriage of justice extend the time within which a party must file a notice of appeal.... The appellate court will ordinarily hold that the desirability of finality of decisions outweighs the privilege of a litigant to obtain an extension of time under this section....
(Emphasis added.)
The phrase `extraordinary circumstances' was defined in Reichelt v. Raymark Indus., Inc., 52 Wash.App. 763, 765, 764 P.2d 653 (1988). There, the Court of Appeals refused to extend the time for filing a notice of appeal that was filed, as here, 10 days late. The appellant argued that `extraordinary circumstances' existed because one of the two trial attorneys left the firm during the 30 days following entry of judgment, and the firm's appellate attorney had an unusually heavy work load. The court rejected the argument and summarized the cases allowing late filings:
In each case, the defective filings were upheld due to `extraordinary circumstances,' i.e., circumstances wherein the filing, despite reasonable diligence, was defective due to excusable error or circumstances beyond the party's control. In such a case, the lost opportunity to appeal would constitute a gross miscarriage of justice because of the appellant's reasonably diligent conduct. RAP 18.8(b).
Reichelt, 52 Wash.App. at 765-66, 764 P.2d 653; see also Shumway v. Payne, 136 Wash.2d 383, 394-97, 964 P.2d 349 (1998) (reiterating and reemphasizing stringent standard of RAP 18.8(b) noted in Reichelt); Schaefco, Inc. v. Columbia River Gorge Comm'n, 121 Wash.2d 366, 849 P.2d 1225 (1993)[4]; Pybas v. Paolino, 73 Wash.App. *317 393, 401, 869 P.2d 427 (1994).[5] The court found the lack of prejudice to the respondent irrelevant and noted that the prejudice of granting an extension of time would be `to the appellate system and to litigants generally, who are entitled to an end to their day in court.' Reichelt, 52 Wash.App. at 766 n. 2, 764 P.2d 653.
The State first contends `extraordinary circumstances' are present here because Plaintiffs' counsel failed to give it notice that the judgments had been entered. However, as noted above, Plaintiffs' counsel gave the State notice of presentation of the proposed judgments. See CR 52(c). This was all Plaintiffs' counsel was required to do; the State was then obligated to monitor the actual entry of the judgments. Plaintiffs' counsel was not legally obligated to bring the State's mistake, if any, to the State's attention. Thus, Plaintiffs' failure to give the State notice beyond that required by CR 52(c) does not demonstrate `extraordinary circumstances.'
The State next contends that Janet Capps' intentional failure to protect the State's interests amounts to `extraordinary circumstances.' However, in her declaration, Capps states that she has `no recollection' of the notice documents and asserts that she did not `knowingly, intentionally or recklessly fail to act' on the same. Further, there is no reasonable inference from the evidence before this court that Capps acted `intentionally' by ignoring the notice documents or failing to bring them to the attention of others. Rather, at best, the evidence was that Capps was not `reasonably diligent' in ensuring that the documents were timely routed to the responsible attorneys in the Attorney General's Office. Negligence, or the lack of `reasonable diligence,' does not amount to `extraordinary circumstances.' Shumway, 136 Wash.2d 383, 964 P.2d 349; Reichelt, 52 Wash.App. 763, 764 P.2d 653; One 1977 Blue Ford Pick-Up Truck, 447 A.2d 1226. Thus, Capps' conduct does not demonstrate `extraordinary circumstances.'
But even if Capps intentionally failed to respond to the April 14 notice, this would not constitute `extraordinary circumstances.' Capps' conduct impaired the State's timely filing of an appeal only because the Attorney General's Office lacked any reasonable procedure for calendaring hearings. The State's own internal investigation, which it asked us to consider, details the problems: The attorneys individually managed and calendared their own cases; the office had no central system for calendaring hearings;[6] the staff was inexperienced and lacked training; there was no coordination between the responsible attorneys and no system for `catching' administrative errors such as the one here. As noted in One 1977 Blue Ford Pick-Up Truck:
We find nothing in the nature of an event or circumstance so extraordinary in this case as to excuse the neglect of appellant's counsel to provide suitable office procedures to cause the judgment to be brought to counsel's attention once it was delivered into the custody and control of counsel's office. It is incumbent upon any attorney to institute internal office procedures sufficient to assure that judgments are properly dealt with once they are delivered into the custody of office personnel subject to the control of counsel. The failure to take necessary steps, to that end, even during periods of unusual circumstances in an attorney's office, is not an acceptable excuse for any resulting failure to obtain personal *318 knowledge of the entry of judgment on the part of counsel....
447 A.2d at 1231. This language aptly describes the problem here. The Attorney General's office lacked office management procedures that could have prevented what occurred here.
The State was not `reasonably diligent' in attempting to file a timely appeal. Reichelt, 52 Wash.App. at 765-66, 764 P.2d 653. It fails to demonstrate `extraordinary circumstances' and `a gross miscarriage of justice' that would allow this court to overlook the late filing. RAP 18.8. Therefore, `the desirability of finality of decisions outweighs the privilege of a litigant to obtain an extension of time .' The State's motion to extend time to file its notice of appeal is DENIED, and Respondents' motion to dismiss the appeal is GRANTED.
IT IS SO ORDERED.
BRIDGEWATER, J., and HUNT, J., concur.
NOTES
[1] We construe court rules in accord with their purpose `as though they were drafted by the Legislature.' Nevers v. Fireside, Inc., 133 Wash.2d 804, 809, 947 P.2d 721 (1997) (citation omitted). And we interpret court rules by reference to rules of statutory construction. State v. Greenwood, 120 Wash.2d 585, 592, 845 P.2d 971 (1993) (citation omitted). Heaney v. Seattle Mun. Ct., 35 Wash.App. 150, 154, 665 P.2d 918 (1983), review denied, 101 Wash.2d 1004 (1984) (citing 3 J. SANDS SUTHERLAND, STATUTORY CONSTRUCTION sec. 67.10 (4th ed.1974)).
[2] `The term `pleadings' has a technical and well-defined meaning. Pleadings are written allegations of what is affirmed on one side, or denied on the other, disclosing to the court or jury having to try the cause the real matter in dispute between the parties.' Tiffin, 44 Wash.2d at 843, 271 P.2d 683 (quoting BLACK'S LAW DICTIONARY (4th ed.) 1312).
[3] The civil rules do provide for notice of the proposed findings, which are generated by the prevailing party. Notice of presentation of findings of fact and conclusions of law, including copies of the proposed findings and conclusions, must be served on the opposing party five days before their presentation to the court. CR 54(f). Plaintiffs' counsel provided such notice here.
[4] In Schaefco, 121 Wash.2d at 368, 849 P.2d 1225, the court said:

Schaefco has not provided sufficient excuse for its failure to file a timely notice of appeal, nor has it demonstrated sound reasons to abandon the preference for finality.
We recognize that Schaefco raises many important issues.... However, it would be improper to consider these questions given the procedural failures of this case. See RAP 18.8(b); RAP 18.9(b).... Schaefco's appeal is dismissed.
[5] In Pybas the court stated:

RAP 18.8(b), by limiting the extension of time to file a notice of appeal to those cases involving `extraordinary circumstances and to prevent a gross miscarriage of justice,' expresses a public policy preference for the finality of judicial decisions over the competing policy of reaching the merits in every case.
See also State v. One 1977 Blue Ford Pick-Up Truck, 447 A.2d 1226 (Me.1982) (State's negligent office procedures, which resulted in late filing of appeal of adverse civil judgment, were insufficient grounds upon which to allow a late filing).
[6] The independent investigator concluded that `{t}o the extent notices for court hearings are served on the office, they should be automatically calendared by someone independently assigned the task.'