IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 80713-7-I |
| A.S., d.o.b. 12/23/2015, | ) | consolidated with |
| J.J.W., d.o.b. 02/04/2011, | ) | No. 80720-0-I |
| R.J.S., d.o.b. 11/28/2008, | ) | NO. 80721-8-I |
| | ) | |
| Minor Children. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

VERELLEN, J. — Jeanna Dianne Wilson filed an untimely notice of appeal of an order terminating her parental rights to her three children. Because we agree that extraordinary circumstances justify an extension of time, we grant Wilson's RAP 18.8(b) motion to enlarge time to file her appeal of the termination order. Regarding the merits of her claim, Wilson contends reversal is required because her claim of Native American ancestry obligated the Department of Children, Youth, and Families (Department) to comply with the notice requirements of the federal Indian Child Welfare Act (ICWA)[1] and Washington Indian Child Welfare Act (WICWA).[2] On the record before us, we cannot conclude the Department had reason to know the children were Indian children or that it failed to conduct a good faith investigation.

---

[1] 25 U.S.C. §§ 1901-23.

[2] Ch. 13.38 RCW.

Wilson further contends the Department failed to prove it offered or provided all necessary services capable of correcting her parental deficiencies within the foreseeable future. The unchallenged findings show that she was provided with all necessary services and that the provision of additional services would be futile.

We affirm.

FACTS

Jeanna Dianne Wilson is the biological mother of A.S., a daughter born December 23, 2015, J.J.W., a daughter born February 4, 2011, and R.J.S., a son born December 28, 2008. Jaquan Wilson is the biological father of J.J.W. and R.J.S., and Rashad Theron Gibbs is the biological father of A.S. The court has terminated both fathers' parental rights, and neither is a party to this appeal.

Wilson has endured a difficult and traumatic life. She struggles with mental health problems, anger management challenges, substance abuse, homelessness, unemployment, and issues related to domestic violence. She reported being emotionally and verbally abused by her father and sexually abused by her mother but had never been treated for these issues. Her criminal history includes convictions for third degree theft, obstructing a law enforcement officer, fourth degree domestic violence assault, and third degree assault.

Wilson has a history of involvement with the Department regarding her children dating back to 2009. In July 2017, the Department filed dependency petitions regarding all three children. The court found there had been domestic violence in her relationship with Jaquan Wilson, with the the children having been

2

present for some of the violence. There was also some evidence Wilson had neglected the children and their medical and dental needs and failed to get them to school.

The court dismissed the 2017 petitions following a fact-finding trial. However, it expressed concern regarding Wilson's care of the children and encouraged her to seek a psychological evaluation and counseling for her mental health and anger management issues. Wilson did not follow through with the court's recommendations.

On February 1, 2018, Wilson was arrested for assaulting R.J.S., and the children were placed in protective custody. On February 5, 2018, the Department filed new dependency petitions as to all three children. In addition to the incident involving R.J.S., the petitions further alleged numerous incidents of neglect of the children by Wilson and cited her mental health issues and marijuana use. The dependency petitions also sought to establish that ICWA and WICWA did not apply.

Wilson entered into agreed orders of dependency on April 11, 2018. Although Wilson had previously told the Department she believed the children may have Indian ancestry, she agreed to findings that the children were not members of or eligible for membership in a federally recognized tribe and that ICWA did not apply. The court ordered the Department to provide Wilson with services including urinalysis testing, an updated drug and alcohol evaluation, a psychological evaluation with a parenting component, mental health counseling, and a domestic violence evaluation. The court ordered supervised visitation for A.S. but no

visitation for J.J.W. or R.J.S. unless the child requests it and the requests are approved by the Department and the court appointed special advocate.

Wilson participated in a mental health assessment, a drug and alcohol evaluation, and a psychological evaluation with a parenting component. However, she failed to undertake most of her random urinalysis tests, failed to comply with drug and alcohol treatment, failed to properly engage in mental health counseling, and did not obtain a domestic violence evaluation.

In May 2018, Wilson completed a mental health assessment with Patti Carroll of Sunrise Services. Wilson self-reported two prior suicide attempts, a history of abusive relationships, depression, anxiety, difficulty controlling anger, and a history of physical and legal problems related to her use of alcohol and methamphetamine. Carroll diagnosed Wilson with generalized anxiety disorder and opined that she was a risk of serious harm to herself or others, that she had dysfunction in role performance, and that she was at risk of deterioration. A prescriber at Sunrise later diagnosed Wilson with posttraumatic stress disorder (PTSD) and prescribed medication. Carroll recommended Wilson participate in counseling sessions twice a week.

In June 2018, Wilson began counseling sessions at Sunrise Services with Sabrina Devrij-Bradley. However, her attendance in counseling was limited and sporadic, and Devrij-Bradley felt Wilson made no progress.

During the summer of 2018, Wilson participated in a psychological evaluation with a parenting component with Dr. Christopher Tobey. Dr. Tobey's diagnostic impressions of Wilson included intermittent explosive disorder, PTSD,

major depressive disorder, and other issues. Dr. Tobey's report recommended the Department work with Wilson to voluntarily relinquish her children. He noted Wilson was unemployed, did not have a permanent address, was not following through on services, was not committed to treatment, did not think she had any issues to be addressed, has poor impulse control, and tended to blame others for the issues confronting her. He further noted the children were afraid of her and that she did not appear capable or willing to appropriately attend to their needs.

In July 2018, Wilson completed a substance use disorder evaluation with Sea Mar Community Health Center. Wilson reported using marijuana to self-medicate for mental health problems and chronic pain. She denied needing treatment for marijuana use and said she was unwilling to stop using it. Wilson was diagnosed with severe marijuana use disorder and referred to intensive outpatient treatment with chemical dependency professional James Straight. She began treatment in July 2018. Straight felt Wilson was "authentic" and "self-reflective" in group sessions.[3] However, Wilson failed to attend the majority of her scheduled sessions. Her progress in treatment was hindered by her inconsistent attendance. She also failed to participate in most court-ordered random urinalysis tests.

Permanency planning orders were entered November 28, 2018. Given Wilson's partial compliance with court-ordered services and lack of progress towards addressing the problems that necessitated out-of-home placement, the

---

[3] Report of Proceedings (RP) (July 9, 2019) at 132.

5

court also approved a permanent plan of adoption. On December 11, 2018, Wilson was charged with assault in the second degree based on the February 2018 incident involving R.J.S. On December 31, 2018, a domestic violence no-contact order was issued protecting R.J.S. On January 11, 2019, the Department filed petitions to terminate Wilson's parental rights to all three children. In a review order entered on April 24, 2019, the court found Wilson was still noncompliant with the services recommended by her evaluators.

A termination trial took place over four days in July 2019. At that time, Wilson was staying with an acquaintance after being homeless on and off since March 2018. She had been having fairly regular visits with A.S. but only in a supervised setting. Wilson had not seen R.J.S. since entry of the no-contact order, and he expressed fear that she might kill him. J.J.W. also refused to visit with her mother.

Debra Price, the Department social worker assigned to the case, testified she did not believe Wilson was currently fit to parent her children. Price testified that Wilson's ongoing parental deficiencies included mental health problems, substance use and abuse, the criminal matters, and issues related to domestic violence, and that there was little likelihood these parenting deficiencies could be remedied in the foreseeable future. She further testified that, in her opinion, all services reasonably available capable of correcting Wilson's parental deficiencies in the foreseeable future had been offered or provided, including drug and alcohol counseling services, services relating to urinalysis testing, mental health counseling services, and the domestic violence assessment. Price testified at

length regarding her efforts to get Wilson to undertake the domestic violence assessment, to no avail. Price also noted that all three children were doing well at their current placement with the paternal grandmother of R.J.S. and J.J.W. The court appointed special advocate, Kathleen Rafferty, also testified she supported termination of parental rights for all three children. She noted that the children are now in a stable permanent home where their needs are being met.

Wilson testified that her homelessness, lack of reliable transportation, and lack of a cellphone made it difficult to engage in court-ordered services. She said she kept a journal, read books, and did online research to address and better understand her mental health. She thought she needed a different type of therapy to cope with her anxiety and outbursts.

On September 25, 2019, after considering the testimony of six witnesses and approximately 80 exhibits, the court entered numerous findings of fact, conclusions of law, and orders terminating Wilson's parental rights as to her three children. Regarding the children's Indian status, the court found the Department had no reason to know the children were Indian children and ICWA and WICWA did not apply.

On November 8, 2019, trial counsel filed a notice of appeal from the termination orders. Because the RAP 5.2(a) 30-day deadline to file the notice of appeal expired on October 25, 2019, Wilson's appeal was 14 days untimely. On December 27, 2019, through appointed appellate counsel, Wilson filed a RAP 18.8(b) motion to enlarge time to file a notice of appeal. The Department

filed an answer opposing the motion. A commissioner of this court referred the motion to the panel along with the merits.

ANALYSIS

Standard of Review

Parental rights are a fundamental liberty interest protected by the United States Constitution.[4] To terminate parental rights, the Department must satisfy a two-step test.[5] First, the Department must prove the statutory elements set forth in RCW 13.34.180(1)(a) through (f) by clear, cogent, and convincing evidence.[6] Evidence is clear, cogent, and convincing if it establishes the ultimate fact in issue as "highly probable."[7] Second, if the court finds the Department has met its burden under RCW 13.34.180, it may terminate parental rights if it also finds by a preponderance of the evidence that termination is in the "best interests" of the child.[8] Where the parent's interest conflicts with the child's right to basic nurture, physical health, mental health, and safety, the rights of the child prevail.[9]

The six allegations the Department must prove in a termination hearing are:

(a) That the child has been found to be a dependent child;

---

[4] Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed.2d 599 (1982).

[5] In re Dependency of K.N.J., 171 Wn.2d 568, 576, 257 P.3d 522 (2011).

[6] In re Dependency of A.M.M., 182 Wn. App. 776, 784-85, 332 P.3d 500 (2014).

[7] In re Dependency of K.C.S., 137 Wn.2d 918, 925, 976 P.2d 113 (1999) (quoting In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995)).

[8] RCW 13.34.190(1)(b); In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010).

[9] RCW 13.34.020.

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future[; and]

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.[10]

Where the trial court has weighed the evidence, appellate review is limited to determining whether the court's findings of fact are supported by substantial evidence and whether those findings support the court's conclusions of law.[11] "Evidence is substantial if it is sufficient to persuade a fair-minded person of the truth of the declared premise."[12] We defer to the trial court on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.[13] If there is substantial evidence that the lower court could reasonably have found to

---

[10] RCW 13.34.180(1).

[11] In re Dependency of P.D., 58 Wn. App. 18, 25, 792 P.2d 159 (1990).

[12] In re Welfare of S.J., 162 Wn. App. 873, 881, 256 P.3d 470 (2011).

[13] Id.

be clear, cogent, and convincing, an appellate court will not disturb the trial court's findings.[14]  Unchallenged findings are verities on appeal.[15]

<u>Untimely Notice of Appeal</u>

Wilson's notice of appeal was untimely.  Therefore, as a preliminary matter, we must consider whether to grant Wilson's RAP 18.8(b) motion to enlarge time to file an appeal and reach the merits of her claim.

RAP 18.8(b) allows the appellate court to enlarge the time to file a notice of appeal "only in extraordinary circumstances and to prevent a gross miscarriage of justice."  RAP 18.8(b) states:

> Restriction on Extension of Time.  The appellate court will only in extraordinary circumstances and to prevent a gross miscarriage of justice extend the time within which a party must file a notice of appeal, a notice for discretionary review, a motion for discretionary review of a decision of the Court of Appeals, a petition for review, or a motion for reconsideration.  The appellate court will ordinarily hold that the desirability of finality of decisions outweighs the privilege of a litigant to obtain an extension of time under this section.  The motion to extend time is determined by the appellate court to which the untimely notice, motion or petition is directed.

We recently addressed applicability of this rule in the context of dependency proceedings in <u>In re Dependency of A.L.F.</u>[16]  In <u>A.L.F.</u>, the parent argued that the court could not dismiss his RAP 18.8(b) motion to enlarge time to file a notice of appeal unless the Department established he voluntarily, knowingly,

---

[14] <u>In re Dependency of H.J.P.</u>, 114 Wn.2d 522, 532, 789 P.2d 96 (1990).

[15] <u>In re Dependency of M.S.R.</u>, 174 Wn.2d 1, 9, 271 P.3d 234 (2012).

[16] 192 Wn. App. 512, 521-22, 371 P.3d 537 (2016).

and intelligently waived his right to appeal the dependency order.[17] He relied upon the parents' fundamental liberty interest in the care and custody of children and their right to counsel at public expense.[18] We held that because a parent has no constitutional right to appeal and dependency proceedings do not permanently deprive a parent of rights, the waiver standard that applies to a criminal defendant does not apply to a parent's motion to enlarge time under RAP 18.8(b) to file an appeal of a dependency order.[19] And because the parent failed to show extraordinary circumstances, we dismissed his appeal.[20]

Because termination proceedings involve a permanent deprivation of rights, Wilson asserts A.L.F. should be limited to preliminary dependency proceedings. Based on an analysis of the three-step Mathews v. Eldridge test,[21] she contends depriving a parent of the right to appeal a termination order absent a knowing, voluntary, and intelligent waiver violates due process. Alternatively, Wilson contends the facts demonstrate extraordinary circumstances to enlarge the time to file her appeal under RAP 18.8(b).

RAP 18.8(b) is narrowly applied.[22] An untimely filing is deemed warranted only when it occurs due to excusable error or circumstances beyond the party's

---

[17] Id. at 519.

[18] Id. at 520.

[19] Id. at 521-23.

[20] Id. at 526.

[21] 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

[22] Beckman v. Dep't of Social & Health Servs., 102 Wn. App. 687, 693, 11 P.3d 313 (2000).

control.[23]  We conclude that such extraordinary circumstances exist here.  In a written declaration, Wilson stated she received the termination order via e-mail and immediately responded "with a definite yes to an appeal."[24]  This direction to her attorney occurred within the 30-day appeal period.  Wilson was subsequently incarcerated on October 8, 2019.  Despite Wilson's unequivocal and timely direction, trial counsel did not file the notice of appeal until 14 days after expiration of the 30-day deadline.  Trial counsel explained that she filed the appeal late because of a sudden increase in her caseload due to health problems of a coworker and because of her own health problems.  Normally, counsel's failure to exercise reasonable diligence does not amount to extraordinary circumstances sufficient to justify an extension.[25]  But Wilson promptly directed her attorney to file an appeal, and counsel's acts and omissions were entirely outside Wilson's control.  Depriving Wilson of an opportunity to appeal an order permanently terminating her parental rights in these circumstances would constitute a gross miscarriage of justice.  We accordingly grant Wilson's RAP 18.8(b) motion to enlarge time to file.  Because we reach the merits of her appeal on this basis, we need not address Wilson's due process claims.

---

[23] Shumway v. Payne, 136 Wn.2d 383, 394-97, 964 P.2d 349 (1998); Reichelt v. Raymark Indus., Inc., 52 Wn. App. 763, 765, 764 P.2d 653 (1988).

[24] Decl. of Jeanna Wilson, Dec. 16, 2019.

[25] Beckman, 102 Wn. App. at 695.

<u>Indian Child</u>

For the first time on appeal, Wilson argues that the trial court erred in finding that the Department made a good faith effort to determine whether the children were Indian children and that ICWA and WICWA did not apply to the termination proceedings. Applicability of IWCA or WICWA is a question of law reviewed de novo.[26]

Congress enacted ICWA in 1978 to "'protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.'"[27] ICWA grants tribes significant rights, including the right to intervene in state court proceedings involving termination of parental rights of an "Indian child."[28] Under ICWA, an Indian child is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."[29] WICWA similarly defines an "Indian child" as "(a) [a] member of an Indian tribe; or (b) eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."[30] WICWA requires notice to a child's alleged tribe where the court knows or has reason to know an Indian child is involved in a termination proceeding.[31]

---

[26] <u>In re Adoption of T.A.W</u>., 186 Wn.2d 828, 840, 383 P.3d 492 (2016).

[27] <u>In re Dependency of T.L.G.</u>, 126 Wn. App. 181, 186-87, 108 P.3d 156 (2005) (quoting 25 U.S.C. § 1902).

[28] <u>Id.</u> (citing 25 U.S.C. § 1911(c)).

[29] 25 U.S.C. § 1903(4).

[30] RCW 13.38.040(7).

[31] 25 U.S.C. 1912(a).

Similarly, Washington requires its courts to provide notice to the child's alleged Indian tribe.[32]

If there is "reason to know" the child is an "Indian child" but the court does not have sufficient evidence to make the determination, the court must confirm the Department used "due diligence to identify and work with all of the Tribes of which there is reason to know the child may be a member (or eligible for membership), to verify whether the child is in fact a member (or a biological parent is a member and the child is eligible for membership)."[33] WICWA also requires the Department to make a "good faith effort" to investigate whether the child is an "Indian child."[34] ICWA and WICWA require the Department to contact the Bureau of Indian Affairs (BIA) if it does not know which specific tribe.[35]

Federal regulations outline the following six circumstances that provide a "reason to know" a child is an Indian child:

> (1)  Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that the child is an Indian child;
>
> (2)  Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child;
>
> (3)  The child who is the subject of the proceeding gives the court reason to know he or she is an Indian child;

---

[32] RCW 13.38.070(1).

[33] 25 C.F.R. § 23.107(b)(1).

[34] RCW 13.38.050.

[35] 25 U.S.C. § 1912(a), RCW 13.38.070(1).

(4) The court is informed that the domicile or residence of the child, the child's parent, or the child's Indian custodian is on a reservation or in an Alaska Native village;

(5) The court is informed that the child is or has been a ward of a Tribal court; or

(6) The court is informed that either parent or the child possesses an identification card indicating membership in an Indian Tribe.[36]

Wilson argues the Department had good reason to know the children were "Indian children" because (1) in 2009, she signed a Native American ancestry request form stating she was Cherokee, (2) the paternal grandmother of J.J.W. and R.J.S. claimed the children's father had Cherokee ancestry, and (3) she self-identified as Caucasian and Cherokee during her 2018 mental health assessment. She contends these assertions of Indian ancestry obligated the Department to conduct a thorough inquiry on the record, and it failed to do so.

The Department asserts the "reason to know" threshold was not met in this case. On the record before us, we agree. In the 2017 dependency petitions, the Department alleged that in 2009, Wilson signed a document stating she was Cherokee. The petitions also alleged the paternal grandmother of R.J.S. and J.J.W. claimed Cherokee ancestry. In 2009, the Department sent inquiry letters to six Cherokee tribal entities but did not receive any substantive responses. The petitions also alleged that in 2013 and 2017, Wilson denied having any Native American ancestry. In the orders denying the 2017 petitions, the court found the

---

[36] 25 C.F.R. § 23.107(c).

Department made a good faith effort to determine whether the children were "Indian children" and that ICWA and WICWA did not apply. The court noted that although Wilson had provided information regarding Cherokee heritage, neither the mother or father of J.J.W. and R.J.S. were members of or eligible for membership in a federally recognized tribe. There was no information regarding the father of A.S. There is no further evidence in the record before us regarding the specific details of the inquiry made by the Department or the evidence the court relied on in making these findings.

The 2018 dependency petitions contained the same allegations regarding the applicability of ICWA and WICWA as the 2017 petitions. During the dependency, Wilson agreed multiple times that ICWA and WICWA did not apply because there was no reason to know the children were members of or eligible for membership in a federally recognized tribe. The shelter care order signed by Wilson included these findings, as did the agreed orders of dependency signed by Wilson. The dependency review orders contained similar findings. And in her answer to the petition for termination, Wilson, represented by counsel throughout the dependency and termination proceedings, admitted that ICWA and WICWA did not apply.

Furthermore, the Department relies on In re Dependency of Z.J.G. for the proposition that "a parent's assertion of Indian heritage, absent other evidence, is

not enough to establish a reason to know a child is an Indian child."[37] "An assertion of Indian heritage" merely "triggers the Department's duty to investigate."[38] Because the Department's good faith investigation before the shelter care hearing did not reveal evidence a parent or a child was a tribal member, we held the court did not err in concluding there was no reason to know the children were Indian children based on the evidence available then.

Here, similarly, the Department investigated Wilson's claims of Indian ancestry. Wilson's assertion of Indian ancestry alone did not establish a reason to know the children were Indian children. On the record before us, Wilson does not establish an error by the trial court.

Provision of Necessary Services

Wilson asserts the trial court erred in finding that the Department clearly met its duty under RCW 13.34.180(1)(d) to provide "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future." She challenges the following findings:

> 2.57 The mother never asked for any further assistance regarding her mental health and substance use disorder treatment. The mother made minimal progress in substance use disorder treatment and has failed to make any progress in mental health counseling, a very important step in regaining the custody of the children.
>
> . . . .

---

[37] 10 Wn. App. 2d 446, 449, 448 P.3d 175 (2019), review granted, 195 Wn.2d 1008, 460 P.3d 177 (2020).

[38] Id. at 468.

2.59 The mother has done very little, if anything, to remedy her parental deficiencies despite the Department's reasonable efforts to make appropriate services available to her. It is highly unlikely that she will even engage in meaningful services in a meaningful way, let alone be able to correct her deficiencies in the foreseeable future.

. . . .

2.65 Therefore offering or providing other services would have been futile given the mother's failure to meaningful engage in her mental health and substance use disorder treatment and the mother's failure to engage in the domestic violence evaluation.

. . . .

2.71 The mother argues that she wasn't given enough time to engage in services before the Department filed the termination petitions, but this argument is belied by the fact that she has not engaged in the services that were ordered by the court in any meaningful way.

. . . .

2.75 The matter did not go to trial until after a full year of dependency. Ms. Price continued to offer and provide the services after the termination petitions were filed. There was no progress by the mother towards correcting her parental deficiencies.

. . . .

2.84 The mother needs to address her underlying mental health and substance use disorder to be able to safely parent, and she has not even begun to do so.[39]

A service is "necessary" if it is needed to address a condition that precludes

reunification of the parent and child.[40] The Department must tailor the services it

---

[39] Clerk's Papers (CP) at 166-168.

[40] Matter of I.M.-M., 196 Wn. App. 914, 921, 385 P.3d 268 (2016).

offers to meet each individual parent's needs.[41]  Generally, if a parent is unwilling or unable to make use of available services, the Department is not obligated to offer other services.[42]  Where the record establishes that the offer of services would be futile, the trial court can make a finding that the Department has offered all reasonable services.[43]  Even if the Department "inexcusably fails" to offer or provide necessary services, "termination is appropriate if the services would not have remedied the parent's deficiencies in the foreseeable future."[44]  More intensive or more extensive counseling is not required where the parent has not consistently participated in counseling and it would take years to make a marked improvement.[45]

Wilson first argues the Department failed to provide specific services to adequately address her PTSD and generalized anxiety disorder diagnosis. Specifically, she contends the Department should have provided her with trauma-informed therapy, eye movement desensitization and reprocessing (EMDR), or cognitive behavioral therapy (CBT) to treat these conditions.  But there is no evidence in the record indicating that any of Wilson's mental health evaluators or practitioners recommended EMDR treatment or that such treatment would have

---

[41] Welfare of S.J., 162 Wn. App. at 881.

[42] In re Dependency of Z.R., 52 Wn. App. 854, 861, 765 P.2d 30 (1988).

[43] In re Welfare of M.R.H., 145 Wn. App. 10, 25, 188 P.3d 510 (2008).

[44] In re Dependency of T.R., 108 Wn. App. 149, 164, 29 P.3d 1275 (2001).

[45] In re Interest of J.W., 111 Wn. App. 180, 187, 43 P.3d 1273 (2002) (further services not required where parent had not seen her counselor for four months, missing counseling was not important to her, likelihood of success was low, and years of counseling would be required to make marked improvement).

been more effective than the counseling and medication she received. And Devrij-Bradley testified she worked with Wilson using CBT as well as motivational interviewing, an evidence-based counseling technique useful in treating anxiety and PTSD.

Moreover, Wilson does not challenge findings which indicate Wilson's failure to make progress in counseling was due to her lack of participation and meaningful engagement rather than an ineffective treatment plan:

> 2.24 The mother was ordered to undertake mental health mental health counseling and she did engage in some counseling with Sabrina Devrij-Bradley of Sunrise Services. The mother's attendance in counseling with Ms. Devrij-Bradley has been very limited, and she has made no progress in counseling. There has been no improvement in the mother's ability to reflect on her behavior.
>
> . . . .
>
> 2.61 The mother argues that the Department should have offered her EMDR, or eye movement desensitization and reprocessing therapy, or cognitive and behavioral therapy for her PTSD. The mother argues this should have been offered to address the trauma that she has suffered in her life.
>
> 2.62 There is no indication that the mother would engage in such services [EMDR or CBT] since she has not engaged in other services the court ordered. The mother had very minimal attendance with her counseling with Sunrise, and she last attended in May 2017.
>
> 2.63 The mother also argues that she should have been provided trauma based therapy, bonding and attachment services with [J.J. W.], and a parenting coach. The mother presented little or no evidence about what such services would actually be.
>
> 2.64 Again, there is no indication that the mother would have engaged in these services because she did not meaningfully engage in other court ordered services.
>
> . . . .

20

>       2.81  The mother does not recognize that there are problems
> in her parenting, and refuses to address her parental deficiencies
> that so clearly impact her ability to safely parent her children.[46]

Because Wilson did not challenge these findings, they are verities on appeal.[47]

Her argument that the Department failed to make any attempt to provide her with

services necessary to treat her diagnoses is not supported by the unchallenged

findings.

Wilson's reliance on In re Dependency of H.W. is misplaced.[48]  In H.W., the

Department failed to refer a developmentally disabled mother to the Division of

Development Disabilities because it simply assumed she lacked the ability to

acquire and apply the parenting information she needed.[49]  The court reversed the

termination because the Department failed to offer all necessary services likely to

correct her parenting deficiencies.[50]  Here, unlike the mother in H.W., the

Department referred Wilson to counseling as recommended, but her attendance

was minimal and she made no progress.

Wilson next argues the Department failed to provide her with integrated

mental health and drug treatment services.  She contends integrated services

were necessary because she sometimes used marijuana as a form of self-

medication to cope with her anxiety and PTSD.  Wilson likens her situation to that

---

[46] CP at 163, 166, 168.

[47] M.S.R., 174 Wn.2d at 9.

[48] 92 Wn. App. 420, 961 P.2d 963 (1998).

[49] Id. at 428-29.

[50] Id. at 429-30.

of the mother in In re Matter of I.M.-M.[51] In I.M.-M., the court reversed a termination where the Department determined the parent was severely developmentally disabled but failed to inform the parent's chemical dependency service providers of this disability, and the service providers did not tailor their services to address the disability.[52] The court noted the mother struggled to make progress despite dutifully showing up for most appointments.[53]

The Department asserts this court should decline to address Wilson's argument because she raises it for the first time on appeal. Although we have the authority to do so, we do not typically consider issues raised for the first time on appeal.[54] Regardless, there is nothing in the record to indicate integrated treatment would have benefited Wilson. Unlike the mother in I.M.-M., Wilson's failure to make progress in mental health and substance abuse treatment was expressly attributed to lack of attendance. And Wilson did not challenge the court's findings that she "does not seem to think there is anything wrong with her using marijuana" or that she "cannot properly parent her children if she is . . . unwilling to discontinue the use of marijuana." [55]

Wilson next argues the Department and the court impermissibly shifted the burden to her to ask for necessary services to address her parental deficiencies.

---

[51] 196 Wn. App. 914, 385 P.3d 268 (2016).

[52] Id. at 918-19.

[53] Id. at 928 (Korsmo, J., dissenting).

[54] RAP 2.5(a); M.S.R., 174 Wn.2d at 11.

[55] CP at 164 (Finding of Fact (FF) 2.31, 2.33).

In support of this claim, she notes that counsel for the Department asked her whether she talked to anyone about wanting a different kind of therapy or looking at therapy alternatives and that the court found Wilson "never asked for any further assistance regarding her mental health and substance use disorder treatment."[56] However, read in context, it appears the Department raised this inquiry in response to Wilson's testimony that she did not find her mental health counseling helpful. The record does not support Wilson's contention that the Department improperly faulted her for not seeking additional services.

Lastly, Wilson challenges the court's finding that offering or providing her with additional services would be futile. She asserts she took significant steps towards remedying her parental deficiencies by completing a mental health evaluation, a drug and alcohol evaluation and a psychological evaluation, as well as attending mental health counseling and substance abuse treatment. She further contends offering more services would not be futile in light of the efforts she made to overcome obstacles such as being homeless and lacking reliable transportation or a working cellphone.

However, the trial court's unchallenged findings amply support the trial court's finding that the provision of additional services would be futile. Wilson made no progress in mental health counseling due to lack of attendance. She made little progress in substance abuse treatment largely because of lack of attendance, and she was not in compliance with treatment. She did not complete

---

[56] CP at166 (FF 2.57).

the domestic violence assessment despite the Department's diligent efforts to engage her. She saw nothing wrong with her marijuana use and was unwilling to stop using it. There was no indication she would engage in additional services because she failed to meaningfully engage in court-ordered services. She did not recognize that there are problems in her parenting and refuses to address her parental deficiencies. There is no reason to believe she will make the necessary changes in her life to address these deficiencies.

Affirmed.

WE CONCUR: